GORHAM
*vs*
LUCKETT.

*Where a Justice of the Peace makes out a fee bill containing several illegal charges, he is liable to only one fine of $15 for such offence and not a separate one for each item.*

---

## Gorham *vs* Luckett.

ERROR TO THE FRANKLIN COUNTY COURT.

*Jurisdiction of the Court of Appeals. Jailers. Judicial acts.*

Oct. 13.

JUDGE MARSHALL delivered the opinion of the Court.

The case stated.

AT the June term, 1845, of the Franklin County Court, the following orders were made, viz: "For divers good

causes to the Court appearing, it is ordered that William A. Gorham be removed from the office of Jailer, in and for the County of Franklin—and that Benjamin Luckett be appointed Jailer of said county, whereupon he took the several oaths required by law, and entered into bond, with William K. Taylor his security in the penal sum of one thousand dollars, conditioned according to law.

And afterwards, on the same day, &c. William A. Gorham, by his attorney, upon affidavit, moved the Court to set aside the order dismissing him as Jailer, and appointing Benjamin Luckett in his place, and the said Benjamin Luckett appeared by his attorney; and the said parties being fully heard, and the Court being fully advised of and concerning said motion, it is ordered by the Court that said motion be overruled, the Court refused to take any action on the affidavit—to which opinion of the Court, the said Gorham tendered a bill of exceptions to the Court. The Court refused to sign and seal the same as presented, and thereupon the attorney for Gorham procured the signing thereof, by (persons named,) three bystanders, and then tendered the said bill as signed again to the Court, but the Court peremptorily refused to take any action whatever, in regard to the said exceptions thus signed and presented. And then the said Gorham moved the Court to grant him an appeal to the Court of Appeals, but the Court refused to grant said appeal, to which said Gorham tendered a bill of exceptions, which the Court refused to sign, and which bill of exceptions was signed by —— (three persons named,) and tendered to the Court as signed, and on which the Court also refused to take any action.''

The bill of exceptions contains, besides the affidavit of Gorham, the statement of one of the Justices who was on the bench and voted for the order, and also the statement of the Clerk of the Court, both of whom were sworn and examined; and it contains the order appointing Gorham Jailer at the October term, 1839, and the bond then entered into by him.

It might be assumed from the proceedings as stated on the order book of the Court, that in removing Gorham, the Court was asserting a power to remove at pleasure,

and was not either professedly or in fact, removing him for misbehavior or breach of duty in any respect, or for any other cause but their own will that another person, and not Gorham, should thenceforth be the Jailer. And the case is scarcely varied by the matters contained in the bill of exceptions, although it appears from the affidavit, that Gorham had no notice that such a proceeding would be attempted, and was not present when the order was made; and although the Justice who was examined as a witness, stated "that no cause was assigned for the removal, that he had heard, by any one, that the order had been drawn up by some one and passed among the members of the Court, and was approved without any cause being assigned, or any chance given said Gorham to be heard, or any notice given to him, or any proof being made in relation thereto; that he knew nothing against said Gorham failing in any instance to discharge faithfully the duties of Jailer; that he was actuated by his preference for Benjamin Luckett." And the Clerk stated that the order was written by one of the Justices, and he heard nothing about the removal until the order was handed from the bench to him to be recorded.

For the revisal and reversal of these proceedings by this Court, Gorham sued out a writ of error, which the counsel of Luckett moved to quash, on the ground that this Court had no jurisdiction of the case. And as this question was regarded as involving all others presented by the record, the case was argued and submitted for final decision.

The fundamental proposition on which the question of jurisdiction rests, and to which all reasoning applicable to it must relate, is that the power of this Court as a revisory tribunal, is judicial only, and extends only to those acts of the inferior tribunals which are in their nature judicial, or which are done in the exercise of a power which is itself judicial. If the power of removing the County Jailer, which is undoubtedly vested in the respective County Courts, be a judicial power, then in whatever form or name, or however irregularly it may have been exercised, the removal must be regarded as a judicial act.

The Court of Appeals as an appellate tribunal, has the power to revise judicial acts and judicial acts only.

By the Constitution of the State, (*Art. IV. Sec.* 2,) the appellate jurisdiction of this Court, subject to such restrictions as may be prescribed by law, is co-extensive with the State. It therefore extends to the revisal and regulation of the entire judicial power of the Commonwealth, as exercised by the inferior tribunals, except in those cases in which it is expressly or impliedly restricted by Legislative enactment. We have neither discovered nor been referred to any restriction, relating to the cases of removal from office by the inferior tribunals, and assume that none such exists. Wherever, therefore, the power of removal as conferred upon them is judicial, the revisory power of this Court attaches to the act of removal, though it be not done in the form of a regular judicial proceeding. One great object of erecting an Appellate tribunal, with jurisdiction co-extensive with the State, is to insure the uniform and regular action of the judicial power in all its channels, and to secure to all the benefits of those forms of proceeding which experience has proved to be essential to the attainment of justice, and to the preservation of individual rights.

To say that the question whether the act of the inferior tribunal is judicial or not, and whether therefore, it is subject to the appellate power or not, depends not upon the actual nature of the power under which alone the act can be lawfully done, but upon the form of the actual proceeding, and the nature of the power claimed, would be to place the jurisdiction of this Court, and the rights and interests of individuals in absolute subordination to the will of the inferior tribunal. The case of the irregular and unjudicial, or arbitrary and illegal exercise of judicial power, is the very case for which the appellate jurisdiction was provided, and which it was intended to correct and regulate. We do not understand these positions to be questioned.

The great question in the case, is therefore, whether the power of removing Jailers, as it now exists in the County Courts, is a judicial or a merely discretionary or arbitrary power. And in the investigation of this question, we refer, first to the Constitution and laws, to ascer-

GORHAM
*vs*
LUCKETT.

In this it is subject to such restrictions alone as may be imposed by Legislative enactment.

The right of appeal is intended to guard against the irregular, arbitrary and illegal exercise of a judicial power.

The Constitution in reference to the office of Jailer, does not fix the tenure of office.

GORHAM
vs
LUCKETT.

tain the actual extent and conditions of the power, as thereby conferred.

The only reference which the Constitution makes to the office of Jailer, is contained in the last clause of the 9th section of article III, which provides that the County Courts shall be authorized by law to appoint various county officers, among whom Jailers are mentioned. In directing the Legislature to pass laws authorizing the County Courts to appoint Jailers, &c., the Constitution cannot be regarded as fixing the tenure of the office, but only as prescribing the appointing power, when the office is to be filled, and leaving to the Legislature the power of prescribing the tenure of office, and regulating the duties of the officer.

*The statute of 1799, (St. Laws, 861,) directs the appointment of Jailers, and fixes the tenure of office 'during the pleasure of the Court by whom they are appointed.'*

The act of 1799, (2 *Stat. Laws,* 861,) "authorizing the County Courts to appoint certain officers, agreeably to the Constitution lately adopted," assuming the construction which we have given to the Constitutional provision on that subject, after requiring the respective County Courts, as often as it may be necessary, to appoint various county officers, and among them county Jailers, declares that the persons so appointed, shall take such oath, and enter into such bond, as shall be required by law, "and shall continue in office agreeably to the rules and regulations prescribed by law : *Provided,* That the appointment of all Jailers shall be for and during the pleasure of the Court by whom they are appointed." If this provision of this statute fixing the tenure of the office of Jailer be still in force, there is an end of the present question. Since, by the very terms of the appointment as therein prescribed, the Jailer holds his office at the pleasure of the Court, and is deprived of it by their mere will. And although this power of removal at will was undoubtedly conferred, as a trust to be exercised with a view to the public interests; yet as it is in its nature discretionary and without limit or condition, beyond the will of the Court itself, there would, of course, be no right or means of questioning its validity or effect, however arbitrary or capricious might be its exercise in any particular instance, provided the removal were properly evidenced as the act of the Court.

But by the 20th section of an act in addition to an act, entitled "an act to amend the act, entitled an act to amend the penal laws of this Commonwealth," approved December 22d, 1802, (2 *St. Laws,* 861 ; 3 *Litt. Laws of Ky.* 69,) it is enacted "that the several County Courts respectively, shall have full power to remove the keepers of the county Jails, whenever it shall appear to them that such Jailers have been guilty of neglect of duty ; and the Governor shall, in like manner, have full power to remove any district Jailer, or the keeper of the State House." and a subsequent section of the same act, after repealing many laws, statutes and parts of statutes, by title or reference, repeals "all laws, statutes and acts or parts thereof, which come within the perview of this act." Whether by this act the proviso above quoted from the act of 1799, is expressly or impliedly repealed, is a question which was seriously contested in the argument, and it is one to which our attention has been closely directed.

As it is unquestionable that the power of the Legislature to prescribe the tenure of the office of Jailer, and to regulate the power of the County Court, in vacating that office, continued the same after the act of 1799, as it had been before ; and as the subsequent Legislative will, upon a subject thus completely within its control, must, if sufficiently indicated, prevail over that will as previously expressed, the enquiry is, whether there is in the 20th section of the act of 1802, any sufficient indication of the Legislative will or intention, that thenceforth the office of Jailer should not be held at the mere pleasure of the County Court, but should only be subject to forfeiture by neglect of duty, and be thus placed on a footing with the great mass of other offices in this Commonwealth. Did the Legislature intend to express in this 20th section, the whole power of removal as it should thenceforth exist in the County Courts? If they did, then as the power previously existing is inconsistent with this intention, and as the proviso conferring the previous power is therefore inconsistent with the 20th section of the act of 1802, intending to restrict that power, the proviso comes clearly within the perview of this 20th section, and is embraced

*Margin notes:*

GORHAM
*vs*
LUCKETT.

By the 20th sec. of the statute of 1802, (*St. Laws,* 861; 3 *Litt.* 69,) the power is given to the County Courts to remove Jailers whenever it shall appear to them *that they have been guilty of neglect of duty.*

The Legislature have the power to prescribe the tenure of the office of Jailer.

by the repealing clause of the statute, if indeed it would not be repealed by implication without it.

If it were allowable to suppose that the Legislators who framed and enacted this 20th section, were ignorant of the proviso in the act of 1799, and of the power thereby vested in the County Court, of removing the Jailer at pleasure, the inference would seem to be irresistible, that as the 20th section of the act of 1802 was intended to confer a new power on the County Court, so it was intended to express, and did express the whole power which it was intended that they should have over the subject. This would necessarily be the construction of the section, considered as conferring a new power. And as every person ignorant of the pre-existing law, would upon reading this section, understand it as conferring a new power, so every such person would understand it as conferring all the power which the Court was intended to have. But supposing, as we must do, that the Legislators of 1802, understood well the pre-existing law on the subject, to which this 20th section relates, that they knew that the County Court had already the power of removing the Jailer, not only for breach of duty, but for any other cause, and without cause, and without question, then the inquiry comes, for what purpose, and with what intent did these Legislators introduce into this act for amending the penal laws, a section which professes to make a formal and substantial grant of power, which construed by its own terms, would be universally understood as granting a new power, and therefore as expressing the whole power which it was intended that the grantee should have? Why make an express grant of a part of the power, if understanding that the whole power, including this part, was already vested in the Court, it was intended that the whole power, including this part, should still remain? If the proviso of the act of 1799, remained in force after the enactment of the 20th section of the act of 1802, then it is absolutely certain that so much of that section as relates to the removal of county Jailers, was utterly without effect, and might just as well be out of the statute. And the same is true, if any part of the pre-existing power beyond that which is expressed in this 20th section, con-

tinued to exist after its enactment. For to the extent that the power is expressed in this section, it already existed and would have continued to exist without any new grant, and the new grant can have no effect whatever, unless it have the effect of restricting the pre-existing power, by bringing it down to the measure of the new grant.

Can we then say, that the Legislature did not intend this section to have any effect, and virtually expunge it from the statute? Or must we not allow to it the only effect which it can possibly have, by understanding it to be, what if construed exclusively with reference to its own terms, it must be understood to be, a substantial grant of power expressing all the power the grantee was intended to have, and withholding or resuming whatever beyond this had been formerly granted? This question does not arise upon a single expression or clause of a sentence, making casual reference to a subject foreign to the context, and which may have been inadvertently introduced. Here is an entire section, which relates to no other subject but the power of removing the officers therein named, and of which the principal subject is the power of removing county Jailers, and the principal object, (apparently at least,) to confer or regulate that power. The section must have been introduced deliberately, designedly and to effect some particular purpose. Are we at liberty to say that it shall have no effect whatever?

This is not a case of the re-enactment of a former law in the same words, or with additional provisions, nor of a re-grant of a pre-existing power to the same or a greater extent. It is not a case of cumulative or additional power or right or remedy. Nor does it come within the rule that a subsequent affirmative statute does not repeal a previous one, which can only apply where both statutes can have effect. This is a formal and express grant of limited power to a depository which already had unlimited power. And it can have no effect, nor be ascribed to any other purpose, but that of limiting the extent of the pre-existing power. If certain provisions of two statutes are identical, the last need not be construed as repealing, but merely as continuing or re-affirming the first, for which there might be various reasons. So, if a statute

give a remedy, or provide that certain acts shall be suffi. cient for the attainment or security of certain objects, and a subsequent statute declare that a part of the same reme- dy or some of the same acts, or other acts entirely differ- ent, shall suffice for the accomplishment of the same ob- ject, here the latter act does not necessarily repeal the former, except so far as it may be expressed or implied in the former that the end shall be attained by no other mode but that which it prescribes. If there be no such restriction in the first, there is no conflict between them. Both may stand together with full effect, and the provis- ions of either may be pursued.

If a subsequent statute require the same, *and more* than a for- mer statute pre- scribed, this is a repeal of the for- mer, so far as the subsequent statute renders more necessary than the first pre- scribed.

But if a subsequent statute requires the same, and also more than a former statute had made sufficient, this is in effect a repeal of so much of the former statute as de- clares the sufficiency of what it prescribes. And if the last act professes, or manifestly intends to regulate the whole subject to which it relates, it necessarily super- cedes and repeals all former acts, so far as it differs from them in its prescriptions. The great object, then is, to ascertain the true interpretation of the last act. That be- ing ascertained, the necessary consequence is, that the legislative intention thus deduced from it, must prevail over any prior inconsistent intention to be deduced from a previous act.

The County Cts. have no other power to remove Jailers than that conferred by the 20th section of the act of 1802.

Since, then, the 20th section of the act of 1802, inter- preted according to its own terms, imports a substantial grant of power. and of all the power that the County Courts were intended to have on the subject, and since it would be uselss and without effect, unless thus understood as regulating the whole subject of the removal of Jailers by the County Courts, we feel bound to give to it this in terpretation; and therefore to conclude, that after that act took effect, the County Courts had no other power of re- moving Jailers, but that which the 20th section confers, of removing them whenever it shall appear to the Court that such Jailers have been guilty of a neglect of duty.

If this 20th section had been the first and only enact- ment on-the subject, all must have concurred in the con- clusion, that it was intended to regulate the whole subject, and that it granted all the power which the Court was in-

tended to have. The difficulty, or rather the embarrass-
ment in the case, arises from the fact that a previous law
had given to the same grantee unlimited power on the
same subject, and that this 20th section makes no refer-
ence to the previous law, and contains no express words
of restriction or change, but granting an expres and limi-
ted power, is framed as if it were the first and only act on
the subject. But do not these circumstances indicate that
it is to be construed as if it were the only act on the sub-
ject? Or shall the first act, which is inferior in authority
so far as they conflict, so far affect the construction of the
last, as to deprive it of all effect? We say the last act
must have effect according to its terms and its obvious
intent. And as both cannot have full operation accor-
ding to their terms and intent, the first and not the last
act must yield. If it could be supposed to have been a
matter of doubt, whether under the act of 1799, the Coun-
ty Court had power to remove the Jailers for neglect of
duty, or if any motive could be assigned for introducing
a separate section, expressly granting this power, except
the purpose of expressing the whole power which the
Courts were to have, then the basis of the construction
which we have assumed would be greatly weakened, if
not destroyed. But we do not perceive that any other
plausible motive can be assigned. And as notwithstand-
ing the act of 1799, it was entirely within the legislative
power to withdraw, restrict or modify the power of remo-
val thereby given to the County Courts, and the Courts
had no right of resistance or refusal, we regard the subse-
quent grant of a more limited power, advisedly and for-
mally made, as implying the resumption of the old grant,
and a restriction of the power according to the terms of
the new one, as by the acceptance of a new lease during
a subsisting term, the rights of the tenant are governed
by the terms of the new grant.

We think some confirmation of the opinion that the
20th section of the act of 1802, was intended to change
the tenure of the office of county Jailer, and the power
of removal in the County Courts, may be derived from
the last clause in the section conferring on the Governor
the power of removing, in like manner, district Jailers

and the keeper of the State House, which we understand to have made a change in the tenure of those offices, as to which there had been no previous legislative grant or regulation of the power of removal. But waiving any argument founded on this analogy, we think a motive for placing the office of Jailer on a more stable footing than it had before occupied, is found in the fact that by the change in the judicial system of the State, whereby the District Courts were abolished and Circuit Courts established in their place, a change effected by the legislation of the same session at which this 20th section relating to the removal of Jailers was enacted, the office and duties of the county Jailers were to become much more important and extensive; and the Jailers, instead of being the officers of Courts of the most limited jurisdiction, were to become the officers also of the Circuit Courts, the highest Courts of original jurisdiction, and having, in fact, almost universal jurisdiction of civil and criminal cases. The county Jailers were to become the keepers of all the prisoners of these Courts, both under civil and criminal process. While, therefore, it might have been deemed fitting that the Jailers, as mere officers of the County Courts or of other inferior Courts, should hold their offices at the pleasure of the County Courts, it might have been deemed unsuitable and incongruous that they should hold their offices by the same tenure when they should become the officers also of the Circuit Courts, having important duties to perform in reference to them.

Another consideration entitled to great weight, is founded upon the inference that the construction and effect which we have given to the 20th section of the act of 1802, in its bearing upon the tenure of office of the Jailer and the power of removal by the County Court, accords with the cotemporaneous, and until the present case, the continued and universal practical exposition of the statute. We have not known, nor upon enquiry have we heard of any previous instance in which, since the act of 1802, a County Court has assumed the power of removing the Jailer without charge or allegation of misconduct or neglect of duty, and without an opportunity of defence. Considering the various motives of personal

The County
Courts have no
power to remove
Jailers but for
neglect of official
duty, since the
statute of 1802.

partiality or hostility, arising from private associations, and from political, religious, or sectional feelings, and the great excitements by which, from time to time, these feelings have been inflamed, it could not be doubted that if it had been understood that the County Courts had the power of removing Jailers at pleasure, there would have been, within the last forty or even twenty years, many instances of its exercise. We infer, therefore, that it never has been so understood; and we should apprehend that in declaring now that the Jailers still hold their offices at the pleasure of the County Courts, under the act of 1799, we should rather be introducing a new principle than declaring a subsisting law. Nor can we close our minds to the reflection that the office of Jailer, though not a high one in point of dignity or honor, is an office established by the constitution and the law, intimately connected with the administration of justice, and one of trust and emolument; and that no other office of a similar character is, under the political system of our State, held by as frail a tenure as the mere will of any tribunal or functionary. Under these considerations we should be disposed, even if the question were more doubtful than it is, to lean against the recognition of a mere arbitrary power, and to carry out the pervading principle of our system: that the tenure of good behavior is a better guarantee for official good conduct, than the subjection of the officer to the arbitrary will or caprice of any body of men. A majority of the Court is, therefore, of opinion that since the act of 1802, the County Courts have no power to remove Jailers from office except for neglect, that is, for breach of official duty.

The power of removing Jailers, as vested in the County Courts, not being arbitrary nor merely discretionary, but to be exercised only upon the specific ground of neglect or breach of duty, it is next to be considered whether this power is judicial: and it would seem to be going far towards proving it to be judicial, when being vested in a Court it is shown not to be an arbitrary or discretionary power, but one limited to particular grounds, and therefore, not dependent upon the will or mere discretion of

*The act of the County Court in removing a Jailer is a judicial act.*

the Court, but upon its judgment as to the existence of the particular grounds.

The mere act of removal, as well as the act of appointment, may, when abstractly considered, be executive or ministerial in its nature. But if the power of doing either, being vested in a Court, is regulated by rules of law, so as to involve a determination of facts and law by which its propriety may be tested, and so as that its improper exercise necessarily violates the rights of some individual which are fixed by law and involved in the act of appointment or removal, it would seem that whatever may be the essential nature of the power when simply considered, it is when placed under these conditions, a judicial power.

In the case of *Pial* vs *Alloway*, (2 *Bibb*, 556,) which was a writ of error to reverse an order of the County Court removing a guardian, this Court being of opinion that the power of removal in that case was discretionary, uncontrolled by any settled rules, and therefore, not judicial, and not within the appellate jurisdiction of this Court, say, "whether the office be public or private, the character of the power will be the same. In either case, if it is to be exercised according to established rules and in a regular mode of proceeding, it will be judicial; but if its exercise depends upon the will or discretion of the functionary who performs it, it must be executive."

In the subsequent case of *Isaacs* vs *Taylor*, (3 *Dana*, 600,) the question again came up as to the jurisdiction of this Court to revise and reverse an order of the County Court removing a guardian, and the case of *Pial* vs *Alloway*, so far as it determines that the power of removing a guardian is altogether discretionary, was overruled, and the orders of removal of one and a subsequent appointment of another guardian were reversed. And the Court after conceding to the former opinion that there might be cases in which the exercise of the power might be discretionary, and that such cases would be beyond the control of this Court, go on to say: "But we cannot admit that the County Courts have a supreme and absolute power over all the orphans and guardians of the Commonwealth, or that they can *ad libitum,* remove guardians without cause

*The removal of a guardian by the County Court is a judicial act; (3 Dana, 600.)*

or without notice." And this denial of arbitrary power in the case, is based upon the sole ground that the guardian, when appointed, has an interest which, though not beneficial, is one which the law recognizes and protects; and it will be seen, upon applying this reason to the case, that the clear import of the opinion, and the ground upon which this Court assumes the jurisdiction, implying of course that the act to be revised was judicial in its nature, is, that as the interest of the guardian as recognized by law, may be violated by an arbitrary removal, the law protects it by requiring that there shall be cause of removal and notice to the guardian, and that by this requisition, implied from the general principles of the law, the power of removal in the case of a guardian, is made judicial, and the act of removal brought within the revisory jurisdiction of this Court.

How much stronger are the grounds for coming to a like conclusion in this case, where the office is one of profit, where the Jailer has a beneficial interest in it, where that interest and his right to the office are protected, not by implication from general principles, but by making him removable for neglect of duty only, where his duty is, in a general sense at least, prescribed by law, and where the only question left to implication is, whether as he is only removable upon the establishment against him of facts amounting in law, to a neglect of duty, he is not entitled to notice and an opportunity of defence. But again, the County Courts have the power of granting letters of administration, which is in effect the power of appointing administrators, and although the power of appointment would seem to be even still more than that of removal, executive or ministerial in its nature, it has been repeatedly held by this Court, that because the laws vest in certain individuals, (in preference to others,) the rights of administration, or because the law designates the person who is entitled to the grant of administration, the act of the County Court in granting the administration, though *ex parte*, is judicial; *Taylor* vs *The Commonwealth*, (3 *J. J. Marshall*, 405;) *Bruce* vs *Fox*, (1 *Dana*, 449.) In the case of *Cotton* vs *Taylor*, (4 *B. Monroe*, 357,) where there had been a contest for the administra-

*The appointment of and removal of administrators are judicial acts.*

tion in the County Court, this Court took jurisdiction to revise the act of selection or appointment, as also in *Halley* vs *Haney and Thompson*, (3 *Monroe*, 141;) and in the case of *Murray and wife* vs *Oliver*, &c. (3 *B. Monroe*, 1,) the Court say, "administration of the estates of intestates and the right to such administration being regulated by law, the removal of an administrator by a County Court, is necessarily a judicial act, and is, therefore, revisable by this Court, under the constitution and statutes of Kentucky." And because the record did not show any citation to, or appearance by the administrator or the administratrix who had been removed, the order removing them was held erroneous and void.

In the case of *Bruce* vs *Fox*, (1 *Dana*, 447,) the Court noticing that this Court has jurisdiction only in "*cases in which the inferior Courts have cognizance*," says there must be cases in which the inferior "Court acts *judicially*, by rendering some judgment or decree, or making some order affecting some personal or proprietory interest defined and regulated by law, and not depending on the *arbitrium* of the tribunal," and that "discretionary acts which do not establish or violate any right defined and guaranteed by law, are not judicial, and are, therefore, not directly revisable by this Court." Now the law defines and regulates the rights and interests of individuals, only by declaring or determining the facts on which those rights and interests are to depend, and by which they are to be decided; any legitimate act which directly affects such rights and interests and establishes or destroys them, necessarily implies a decision upon the facts and the law on which those rights are made to depend ; and therefore, every such act is in itself essentially judicial, by whatever tribunal it may be exercised. If the power of doing such an act be vested in the executive department of the government, the act itself is not the less judicial in its nature or essence, but the power under which it is done, being, in the distribution of power, vested in the executive and not in the judiciary, it is, in the constitutional sense, an executive and not a judicial power, and being entrusted solely to the judgment of the executive, is withdrawn from the control of the Courts. But the same

Discretionary acts which do not violate any right defined and regulated by law, are not judicial, and therefore not revisable by this Court, nor can acts confided to an executive officer be the subject of revision by this Court.

power, when vested in a Court, is not only in essence but in form, and in the constitutional sense, a judicial power, and when exercised by an inferior tribunal, is within the appellate jurisdiction of this Court.

If the Clerks of the various Courts in this Common. wealth, instead of being removable for breach of good behavior by this Court only, had been made removable for the same cause by the Governor alone, then the act of removal, though essentially judicial as implying an exercise of the judicial function of deciding upon the law and the evidence, and applying that decision effectually to the determination of the right of the Clerk to the office, would not, in a constitutional and legal sense, have been a judicial act, because it would be done by the executive functionary, and under that power which, in the constitutional classification, is denominated the executive power of the Commonwealth. But if at the same time that Clerks had been thus removable by the executive power, the Justices of the County Court had been made removable by this Court for breach of good behavior, the power thus vested in this Court, though implying the exercise of the same function of deciding upon the law and the fact, and applying the decision to the determination of the rights of the individual, would unquestionably be deemed a ju. dicial power, and its exercise would be a judicial act, not only because the power was vested in a judicial tribunal. but because its exercise under the terms in which it was granted, would be judicial in its nature.

The power of removing Clerks for breach of good be. havior, is in fact, vested in this Court only. It never has been doubted that it was a judicial power, and although no statute has prescribed the mode of proceeding in which the power is to be exercised, this Court, in obedience to the great principle pervading every enlightened system of jurisprudence, which prescribes that the individual whose rights are to be affected by a judicial act involving the ascertainment of facts against him, shall have an opportunity of defence. has uniformly required regular charges and specifications pointing out the supposed breaches of good behavior, and has been careful that the accused should have full opportunity of making defence. And if

GORHAM
vs
LUCKETT

If Clerks of Courts were removable by the Governor, the act would not be judicial, but if Justices of the County Court had been made removable by this Court, it would be a judicial power, and the accused would have the right to know the charge and be heard in their defence.

Clerks tried in this Court have a right to notice of the charges against them.

Clerks had been removable for breach of good behavior by the Courts in which they officiate, would not the power and the act of removal be essentially the same as now? Would they not be judicial? Would not the Courts, in the absence of any statutory regulation of the proceeding, be bound by the principles of universal law and justice, to afford to the Clerk some opportunity of being heard before sentence of removal would be pronounced? Would not a Circuit Judge, though supposing the Clerk to have committed a breach of duty in his presence and under his immediate observation, call upon him before removal, to answer to the charge, and allow him to explain if he could not deny the fact? Or would this Court, with all the respect which it owes to the inferior tribunals, and especially in cases in which they might act upon their own observation, hesitate to reverse an order removing a Clerk in his absence, without notice, without charge, without even an allegation of breach of duty or other cause, but showing on its face that it was a mere arbitrary act of power? To this question all the cases and the principles which have been referred to, give a negative answer; since even the case of *Piat* vs *Alloway* decides that if the power be not discretionary but judicial, the appellate jurisdiction of this Court attaches to a case of its exercise; and although it may be implied from the opinion in that case, that a power should not be deemed judicial unless it is to be exercised in a regular mode of proceeding; yet it could scarcely have been intended to decide that the power must have been exercised in a regular mode in the particular instance, nor that a regular mode of proceeding should have been established with a special view to the exercise of that particular power. And the other cases, upon the removal of guardians and administrators, show that the question whether the power or the act done, is judicial or not, and whether it is within the revisory jurisdiction of this Court, does not depend either upon the mode in which it has been exercised, or upon the existance of any prescribed or special mode; but that if in reference to other principles which have been stated, the power or act of an inferior tribunal is ascertained to be judicial, the consequence is, that it

should be exercised in such mode as will allow the party to be affected by it, an opportunity of being heard ; and that if such opportunity has not been allowed, this alone is a cause of reversal.

How then is the case before us to be exempted from the operation of these principles, and from the jurisdiction of this Court? A guardian, an administrator, a Clerk, and a Jailer, all hold their offices by a tenure substantially the same. Because the law gives to persons standing in certain relations to the intestate, prior rights of administration, the appointment itself of an administrator, though exercised by the County Court, is held to be a judicial power within the control of this Court. Because the guardian has an interest recognized by law, which may be injured by his removal without just cause, the removal of a guardian is a judicial act; and for the same reason, if there were no other, so must be the removal of an administrator. The removal of a Clerk by this Court, for breach of good behavior, is unquestionably a judicial act: and why is not the removal of a Jailer by the County Court, for the same cause, a judicial act to be exercised only under a judicial power, and in a judicial mode? The Jailer has a legal right to hold his office until removed for breach of duty. Why is not the power of determining that he has been guilty of such breach and of removing him therefor a judicial power?

A Jailer has the right to notice of a motion to remove him from office.

It is said truly, that the County Court is a tribunal of mixed powers, some of which are judicial, some executive, and some partaking of a legislative character, and that this Court has jurisdiction of those only of its acts which are done under its judicial power. But while this fact would certainly repel the inference that a power is judicial merely because it is conferred upon the County Court; it does not authorize the inference that a power judicial in its nature, should be regarded as executive or legislative because it is conferred on that Court. Nor is there any solid foundation for the argument that none of its powers are to be regarded as judicial, and as coming within the appellate jurisdiction, but such as are conferred by the use of the word "cognizance," or by the use of the equivalent phrase, "power to hear and determine."

Gorham
vs
Luckett.

This Court has not, heretofore, discussed or decided the question of its jurisdiction with reference to the particular form of words in which the power was granted to the inferior tribunal, but exclusively with reference to the nature of the power and of the acts to be done under it. The word *cognizance* is used in granting to the County Courts the power of appointing guardians, and yet it may be questioned whether the power of appointing them is, in all cases, a judicial power; and it is certain that in the case of *Piat* vs *Alloway*, the power of removing a guardian, notwithstanding the word cognizance, and without reference to it, was held not to be judicial, and this word was not resorted to as sanctioning a contrary decision in the case of *Isaacs* vs *Taylor*. We observe too, that the County Courts have by the statute, "cognizance of admitting deeds and other writings to record;" and it would certainly be doubtful whether this Court would take jurisdiction of such a case. While on the other hand the word cognizance is not used in giving to the County Courts the power to establish ferries, and the jurisdiction of this Court over their acts on this subject, is well settled.

It is suggested too, that some doubt is thrown upon the nature of this power, by the last clause of the 20th section of the act of 1802, which, by recognizing or establishing a similarity between the power conferred on the County Courts to remove the county Jailers, and that conferred on the Governor to remove district Jailers, and the keeper of the State House, admits of the inference, that as the latter power is executive, so the former being like it was also intended or understood to be executive. But as we have already seen, the conditional power granted is in its own nature, not only similar, but essentially the same, whether vested in a judicial or executive functionary. If vested in the executive, it is for that reason, in the Constitutional sense, an executive power. If vested in a purely judicial tribunal, it remains a judicial power. If vested in a tribunal of mixed character, like the County Court, it is to be referred to its character as a judicial body, because it is in its nature and effects a judicial power. And if the question were doubtful, the power itself or an act done under it ought to be regarded as judicial,

rather than to close against the party aggrieved by its abuse, the common remedy by appeal or writ of error, and drive him to the more circuitous and expensive remedies by which the question of the rightful exercise of the power, must at last be brought before this Court.

It is also suggested, that the terms in which this power is given to the County Courts, indicate that something more than mere judicial power was intended to be conferred. They shall have "full power," &c. "whenever it shall appear to them," &c. But whatever force is given to the word 'full,' the power is subject to the condition afterwards expressed, that it shall appear to them that the Jailer has been guilty of neglect of duty. And although the word 'appear' has reference in one sense, to that which is seen by the eye, we have no doubt that it was intended to be used in its broader sense, as signifying that which is obvious or known, or clear, or made clear by evidence, or reasoning; and that it comprehends all the cases in which it shall be satisfactorily known or shown to the Court that the Jailer has been guilty, &c. The word 'appear' or 'appearing,' is one of frequent use in judicial proceedings, (and is sometimes used in statutes referring to them,) as meaning "clear to the comprehension," when applied to matters of opinion or reasoning, and "satisfactorily or legally known or made known," when used in reference to facts or evidence. And as it cannot be understood in this place as restricting the power of removal to cases in which the Courts might actually see the neglect of duty, but as extending it to all cases of neglect of duty, without discriminating between those which might occur in view of the Court, and those which might be otherwise made known, we do not perceive that it is entitled to any peculiar force, or that it indicates in any degree, that the Court may act otherwise than judicially in removing the Jailer. The most that can be implied is, that in some cases the Court might derive its knowledge from its own view; and might therefore call immediately upon the Jailer to answer for neglect of duty, and certainly in such cases great weight would be due to its judgment upon the law as well as the fact. But even if it should be assumed that the grant of full power to remove whenever it shall

appear to them that the Jailer has been guilty, &c. im-
ports that their judgment of his guilt is to be conclusive,
it certainly does not import that they may remove without
adjudging him guilty. nor that in ascertaining his guilt,
involving as it does both fact and law, they do not act as
judges.   On the contrary, the clear import of the clause,
is that the removal is only to be the consequence of its
appearing to the Court that the Jailer is *guilty*, which im-
plies that there shall be in some form a charge, a trial and
a conviction, and thus denotes, with peculiar force, that
in removing a Jailer, the Court is intended to act judi-
cially.   And even if its judgment of guilt were conclu-
sive, this would not authorize it to remove without such
judgment, nor necessarily oust this Court of its jurisdic-
tion to enforce a fair trial.

An argument against the views which we have taken, is
also drawn from the fact, that while the proceeding for
the removal of Constables by the County Court, is regu-
lated by statute, so far as to require a charge, and ten
day's notice. and a concurrence of a majority of all the
Justices of the county in order to remove him, there is no
regulation of the power to remove a Jailer.   But surely
this fact cannot authorize the inference contrary to the
fair import of the act relating to the removal of Jailers,
that in his case there is to be no notice, no charge, no
trial, and no conviction.   There is no statutory regula-
tion of the proceeding to remove a Clerk, which is nev-
ertheless judicial.   When the first act (of 1801,) confer-
ring or regulating the power of removing Constables pass-
ed, which requires only a charge and ten day's notice,
Jailers were removable at the pleasure of the County
Court, and were therefore entitled to no provision for
trial, &c.   And the two subjects having thus become
separated, no inference can be drawn from the failure to
refer to the case of Jailers in the subsequent act of 1803,
which was an act to amend and reduce into one the sev-
eral acts relating to Constables.   Besides, from the more
intimate relation of the Jailer to the County Courts, and
the narrow local limits in which he was to act, some of
his services being to be performed in presence of the
Court, and the rest in the town in which it would be held,

the same provisions, with regard to notice especially, might not be either necessary or proper for both cases. The additional restriction placed upon the removal of Constables, by the act of 1803, requiring the presence of a majority of the Justices, may have been occasioned by a particular case of removal, while no circumstance had occurred since the power of removing Jailers had been limited, to show the necessity of future Legislation on the subject, or to call the attention of the Legislature particularly to it. Until the present case, no such circumstance, so far as we are informed, has occurred up to the present time. And as the 20th section of the act of 1802, sufficiently imports, that to authorize the removal of a Jailer, he must be found guilty of neglect of duty, thus implying that there must, in some form, have been a charge, a trial, and an opportunity of defence; and as for reasons already adverted to, a more specific regulation as to the time of notice, and the mode of making the charge, might not be suitable to all cases, and in some might be unnecessary and inconvenient, the Legislature of 1802 might well have supposed that there was enough in the section on this subject to point out the substantial objects intended to be secured, and that the particular mode of securing them in each case, might be safely left to the judicial discretion of the County Courts. No abuse having subsequently occurred to manifest the necessity of more express or specific legislation, the omission of such legislation in 1802 and since, does not, in our opinion, furnish sufficient ground for inferring against the fair import of the section relating immediately to the subject, that in removing a Jailer for being guilty of neglect of duty, there was to be no trial, no opportunity of defence, no judgment of guilt. Nor do we find in any of the suggestions which have been made, any necessary or certain implication that this judicial power of trying and convicting a Jailer, and thereupon removing him from office, was intended to be withdrawn from the appellate jurisdiction of this Court. And we should not indulge such an implication, unless it were clear and palpable.

Under every view of the subject, therefore, a majority of the Court is satisfied that the power of removing the

The removal of a Jailer by the County Court is

GORHAM
*vs*
I LUCKETT.

a judicial act, &
a writ of error or
appeal lies to
this Court.

Jailer, as now subsisting in the County Court, is a judicial power; that any legitimate exercise of it is a judicial act, of which this Court has appellate jurisdiction; and that whatever informality may, in the absence of special regulation, be allowable in the mode of its exercise, no order or judgment of amotion can be valid, unless the record shows that the Jailer has had an opportunity of being heard in his defence, and that the Court has adjudged him guilty of neglect or breach of duty. We are of opinion, therefore, that the order of removal in the present case being without these essentials, having been in fact made without notice, or any other opportunity of defence, and even without an alledged cause, but manifestly an assertion of a power to remove at pleasure without trial and without cause, is erroneous and void; and that there having been consequently no vacancy in the office of Jailer, the appointment of Luckett was also nugatory and void; that Gorham had a right immediately to move that their illegal orders constituting an obstacle to the regular discharge of his duties should be set aside, and that Luckett, who claimed under them, having appeared to the motion, the Court erred in not forthwith setting aside the said orders.

In any valid proceeding for the removal of a Jailer, however informal it might be, the Commonwealth would be expressly or impliedly a party, and should therefore be made a party to the writ of error for its reversal. But here was no proceeding to which the Commonwealth could have been expressly or impliedly a party, but only a simple order made under the assumption of arbitrary power, and to which if the power had existed, the Commonwealth would not have been a party. And as the Commonwealth can have no interest in maintaining such an order, and no proceedings in her behalf can be engrafted on it, and as the two individuals interested under and against it were parties to the motion to set it aside, and are parties, plaintiff and defendant in the writ of error, we are of opinion that it is not necessary to make the Commonwealth a party defendant to the writ, but that it may be maintained in its present form.

When there was
no regular pro-
ceeding to re-
move a Jailer,
and another was
appointed, the
appointee ap-
pearing to the
writ in this court
sued out by the
Jailer removed—
Held that the
Court might ad-
judicate.

Wherefore, the motion to quash the writ of error is overruled, and the order removing Gorham as Jailer of Franklin county, and the order appointing Luckett Jailer in his place, are reversed and annulled, and the cause is remanded to the County Court of Franklin county, with directions to make an order setting the said orders aside.

Judge Breck being of opinion, that even under the act of 1802, the power of the County Courts, in removing a Jailer, is executive and not judicial, does not concur in the conclusion to which a majority of the Court has come, nor in all of the reasoning which has led to it.

*Cates & Lindsey* for plaintiff: *Hewitt* for defendant.