STEWART A. MITCHELL, APPELLANT, *vs.* WM. J. J. DUNCAN, APPELLEE.

All Acts in *pari materia* should be taken together as if they were one law.

A subsequent Statute which adds accumulative penalties and institutes new methods of proceeding does not repeal a former, without negative words, nor does a latter Act repeal a prior one unless there be a contrariety or repugnancy in them, or at least some notice taken of the former so as to indicate an intention to repeal.

An affidavit made by a defendant in execution declaring " that the execution issued is illegal in this : that the said writ has not been issued under the seal

of Court, and nothing thereon is therefore legally due:" held to be insufficient under the 2nd section of the Act of 1834.

Where a Statute requiring a bond to be given is silent as to the condition thereof, the condition is to be found in the object and intention of the Statute; hence the sureties on a bond given under the 2nd section of the Statute of 1834 conditioned that it shall be void, if it shall appear that the execution issued without the seal of the Court, are liable to the judgment authorized by the third section of said Act.

Where a Statute directs the doing of a thing for the sake of justice, the word *may* means the same as *shall*.

Appeal from a judgment in Hamilton Circuit Court. The facts of the case are fully set out in the opinion of the Court, to which reference is made.

*W. Call*, for Appellant.

*B. C. Pope*, and *Archer & Papy*, for Appellee.

PEARSON, J., delivered the opinion of the Court:

This was an action for slander, in which Duncan, the appellee, on the 27th day of November, 1855, recovered his judgment against Mitchell, the appellant, for the sum of $1,650, together with costs. Execution was issued upon this judgment, bearing date the 6th day of December, 1855. On the 28th day of December, 1855, this execution was levied upon certain property of the appellant, and on the 4th day of February, 1856, he filed his affidavit of illegality in the following words, to-wit:

WM. J. J. DUNCAN,     } Slander. In Hamilton Circuit
         vs.           } Court—Middle Circuit of Flori-
STEWART A. MITCHELL, } da.

I, Stewart A. Mitchell, being duly sworn, do depose and say that the execution issued against me in the above case is illegal in this: that the said writ has not been issued under the seal of Court from whence the same was issued, and nothing thereon is therefore legally due.

Sworn to and subscribed before me, this 4th day of February, A. D., 1856.      STEWART A. MITCHELL.

ROBERT J. LACY, Justice of the Peace.

On the same day Mitchell filed his bond to Duncan,

which was approved by the Sheriff, in double the amount of the said execution. The bond is in the usual form, but the condition thereof is as follows, viz:

" *The condition of the above obligation is such,* That whereas affidavit has been made that a. certain execution in a case, wherein Wm. J. J. Duncan was plaintiff, and Stewart A. Mitchell was defendant, that the said execution was illegal in this: that the said writ has not been issued under the seal of the Court from whence the same was issued.— Now if it shall appear that the said writ has not been properly issued in this: that there is no seal to the said writ, then the above obligation to be void, else to remain in full force and effect."

At the April term of the Circuit Court thereafter, an order was made setting aside the affidavit of illegality and directing execution to issue against Mitchell and his securities on the bond. To this order and judgment the appellant excepted, and brings his appeal to this Court.

This was a proceeding under the 2nd and 3rd sections of the Act of 1834, " to amend an Act concerning executions," the second section of which provides, " that in all cases where an execution shall issue illegally, and the person against whom such execution is directed, his agent or attorney shall make oath thereof, and shall state in the affidavit the cause of such illegality, the Marshal, Sheriff or other officer, shall return the same to the next term of the Court from whence the same issued, and the Court shall determine thereon at such time; *Provided,* That the party making the affidavit be required to state whether any part of said execution be due, and where the party so making the affidavit shall admit a part of the execution to be legally due, the amount so acknowledged shall be paid before the affidavit is received; *And provided also,* That the person claiming the benefit of this section shall execute to the Marshal, Sheriff or other officer, levying said execution, a bond with suffi-

cient security, in at least double the amount of said execution, or that part thereof suspended by the affidavit." And the third section provides, " that if the affidavit of illegality be set aside, execution may issue against his securities on the bond."

Although no exception was taken, nor the question made before us by counsel, yet it has been suggested that the 6th section of " an Act to amend the execution laws," approved the 15th March, 1844, operates as a repeal of the foregoing provisions of the Act of 1834. It is therefore necessary to dispose of this question before proceeding to consider of the sufficiency of the affidavit and bond under that Act.

The 6th section of the Act of 1844, provides, " that the Court before which an execution is returnable, or the Judge in vacation may on application and notice to the adverse party, for good cause upon such terms as the Court may impose, direct a stay of the same, and the suspension of proceedings thereon, until the first term of the Court thereafter, or until a decission can be had on the same."

And in the last section of the said Act it is declared that "all laws inconsistent with this Act, be and the same are hereby repealed."

The simple question then is whether the provisions of the Act of 1844 are *inconsistent* with those of the Act of 1834. These Statutes are in *pari materia*, and should therefore be construed together. They provide consistent and independent remedies for a defendant, against whom the process of execution is like to be abused and are distinguishable in several particulars. The first statute is confined to "cases where an execution shall *issue* illegally" and would not apply to cases where the abuse of the process was subsequent to a legal issue of the same. It prescribes an affidavit on the part of the party making the application, stating the particular cause of illegality complained of, and de-

claring whether any part of the execution be due, and requires a bond with sureties to be executed by the applicant to the sheriff for double the amount suspended by the affidavit. The proceeding then under this statute is in the nature of an application for an injunction in chancery.— The complainant is required to swear to the facts and merits of his case, and is subjected to the further equity of declaring what sum is really due, and relief is only granted to him upon condition that he secure the adverse party, for the amount suspended, by bond and sureties. And while these sureties afford the plaintiff in execution a new and further security for his debt, which his judgment and execution did not supply, a summary remedy is given him, whereby he obtains execution against them at once, provided the affidavit be set aside. The remedy therefore afforded by this statute though analagous to that obtained by injunction, is more ample and convenient by reason of dispensing with the question of equity jurisdiction, and directing execution on the bond, without a formal suit thereupon.

Now the subsequent Act of 1844 has none of these requirements, and imposes none of these conditions. It simply gives the Judge, at Chambers, upon notice to the opposite party, that power over the process of the Court which before he could only exercise in open Court. It requires no affidavit of merits, it provides no new security by bond, it affords no execution against new parties, but merely authorises the Judge to suspend proceedings under the execution until the next term of the Court, or until a decision can be had on the same, upon such conditions as he may impose. The suspension of the execution under this statute is the Act of the Court, while under the former Act it was suspended by the sheriff upon the requisitions of the law being fulfilled. The former law, therefore, might afford a remedy not available under the latter, in case the judicial

3

office was vacant, or the Judge inaccessible, by reason of sickness or absence.

There are no recitals or words of repeal in the latter Act, in reference to the former, nor is there any apparent intention on the part of the Legislature to repeal it. There is no such repugnance in the latter statute to the former, as to render the execution of the one incompatible with the provisions of the other, or to prevent in the language of the books, the two remedies from subsisting together— "Two statutes shall stand together and both have effect, if possible, for the law does not favor repeals by implication, and all acts in *pari materia* should be taken together, as if they were one law"— 9 Cowen, 437. And it is a general rule that subsequent statutes, which add accumulative penalties, and institute new methods of proceeding, do not repeal former penalties and methods of proceeding, ordained by preceding statutes, without negative words. Nor hath a latter Act of Parliament ever been construed to repeal a prior Act, unless there be a contrariety or repugnancy in them, or at least some notice taken of the former Act, so as to indicate an intention in the lawgiver to repeal it. The law does not favor a repeal by implication unless the repugnance be quite plain; and such repeal carrying with it a reflection on the wisdom of former parliaments, it has ever been confined to repealing as little as possible of the preceding statute. Although these two Acts of Parliament are seemingly repugnant, yet if there be no clause of *non obstante* in the latter, they shall if possible have such construction that the latter shall not be a repeal of the former by implication. The same view has been taken where powers under several acts are such as may well subsist together. A subsequent Act, too, which *can be reconciled* with a former Act, shall not be a repeal of it, though there be negative words. When there is a difference in the whole purview of two statutes, apparently

relating to the same subject, the former remains in force. Dwarris on statutes, 674, and authorities there cited. These adjudications were quoted with approbation by C. J. Nelson, in Bowen & Lease, 5 Hill, N. Y. Rep. 225, who states the principle thus: " The invariable rule of construction in respect to the repealing of statutes by implication, is, that the earliest act remains in force unless the two are manifestly inconsistent with and repugnant to each other." And Chancellor Kent, 1 Com. 463, lays down the principle to the same effect. The case of Dugan et al. *vs.* Giddings et al. 3 Gillis Rep. 154, supports the same doctrine.

The question here then, is, whether there is such inconsistency in the two statutes under consideration, that the one cannot be enforced without the abrogation of the other. We see no such repugnance, but regard the two statutes as providing separate, consistent and independent remedies, which though concurrent and accumulative under some circumstances, yet provide for different classes of cases. The earliest Act providing a remedy where the debt, or some portion thereof, was not due, and the execution had *issued illegally,* by a proceeding before the Sheriff, and the latter Act extending the remedy upon notice and application to the judge in vacation to all informalities or abuse of final process whatsoever.

This brings us to the question of the sufficiency of the affidavit and bond, under the Act of 1834, and the propriety of the judgment rendered thereupon. The clear and manifest intention of the Act was to impose upon the defendant in execution, seeking the benefit of its provisions, the necessity of making oath that some portion of the recovery had in the case was not due, and to suspend the execution for that portion only, upon the defendant filing his bond in double the amount so sworn to. The execution is not the evidence of the defendant's indebtedness, but merely the mandate of the Court to its executive officer, to

enforce its judgment, which is the true evidence of an ascertained debt. We consider the statement in the affidavit, that the execution had issued without the seal of the Court, "and nothing thereon is therefore due," an induction not justified by the circumstances, and a palpable evasion of the true intent and meaning of the Act. The judgment existed — the debt ascertained by it was due — the plaintiff therein was entitled to his execution, and had a lawful right to sue it out, and the only error alleged consistent in the misprison of the clerk in failing to affix the seal of the Court to the writ, which in other respects was in due form. In such a case we have no doubt the Circuit Judge upon application would have quashed the writ, and ordered another in proper form to issue ; and this was the proper remedy. But the defendant in execution chose a different remedy, involving much delay to the plaintiff, and not applicable to his case, and he must abide the consequences. Any other construction of this statute would make it the instrument of perpetual wrong and injury to plaintiffs, instead of a convenient means of protection to oppressed defendants.

The only remaining question is in relation to the correctness of the judgment against the securities to the appellant's bond, and in this we think there is no error. The statute only enacts that the person claiming the benefit of its provisions "shall execute to the sheriff, or other officer levying said execution, a bond with sufficient security in at least double the amount of said execution, or that part thereof suspended by the affidavit," and prescribes no condition whatever for such bond. It's condition must therefore be found in the object and intention of the statute under which it was given. If the bond had no condition, as now is prescribed by the statute, still it would be controlled by the obvious meaning of the statute, and the parties only held bound, under the penalty, to the extent of so much

of the execution as had been suspended by the affidavit in the particular case in which it was filed. The bond in this case is formal and complete in the prescribed penalty, and is approved by the sheriff. This is all that could be required. But it has a condition not prescribed by the statute, and inconsistent with its effect and operation. It was undoubtedly the intention of the sureties to become bound according to the liabilities imposed by the statute. Their bond has performed its office by securing to the defendant in execution the suspension thereof which he desire '. If a condition had been improvidently inserted in the bond, more onerous upon them than was consistent with the statute, it would necessarily have been void; and when one imposing a less obligation is annexed it must be equally void. The condition to the bond in this case is to the effect that it shall be void, provided it shall not appear that the execution in question had issued without the seal of the Court. This we regard as mere surplusage not affecting their obligations and liabilities under the statute. Having aided the defendant in execution in obtaining a suspension of the execution by executing the bond, it would be permitting them to take advantage of their own wrong to allow them to escape their responsibilities to the plaintiff.

The provision in the third section of the Act of 1834, that execution "may issue against the party making the affidavit, and his securities, provided the affidavit be set aside, we consider imperative." Words of permission shall in certain cases be obligatory. Where a statute directs the doing of a thing for the sake of justice, the word *may* means the same as *shall.* The statute 23 H. 6, C. 10, says, the sheriff, etc., may take bail, but the construction has been that he shall be bound to take bail. So if a statute says that a thing may be done, which is for the public benefit, it shall be construed that it must be done." Dwarris on statutes, 712.

We are therefore of opinion, that the Act of 1834, on this subject, was not repealed by the Act of 1844. That the affidavit filed was insufficient, and the bond valid, and the securities liable thereupon, and that there was no error in the judgment of the Circuit Court, which is therefore affirmed.

BALTZELL, C. J., delivered the following dissenting opinion:

I am of the opinion that the eighth section of the law "to amend the execution laws passed in 1844, repeals the provisions contained in the law of 1834. It covers the entire ground of the previous law, of 1834, and all cases that can possibly arise through irregular, illegal or defective executions. It is the appropriate, rightful and becoming remedy. The first is very far from this, as it is not only very obscure, but puts it in the power of a defendant and the officer of the Court to obstruct its process and defeat and arrest its mandate.

It is said there is not a repugnancy nor inconsistency between the two, to produce a repeal. With due deference I think there is. When a party complaining of an illegal or improper execution is referred by the last action of the Legislature to the Court for a remedy, with a declaration, that any other provision is abrogated, where is the pretext for an application elsewhere? Can it be supposed to have been the intention of the Legislature to associate the sheriff with the Court in the performance of this duty? Will any one maintain that the power is concurrent, and that the sheriff could properly and legally grant a stay of execution for a cause that had been presented to the Court and deliberately refused? Yet such it seems to me is the legitimate result of the ruling of the Court. It does seem to me that the direction to the Superior—the Court, to perform this duty, excludes the action of the subordinate, as fully and completely as if the particular clause had been ex-

pressly repealed. The construction I give to the law is sustained by the practice under it ever since its passage, as I believe this case presents the first and only instance of an attempt to act under the old law. It is sustained, too, I think, by the authorities. 3 Gill. 138, 6 B. Mon. 146, 19 Vermont, 230.